NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO D.S.

No. 1 CA-JV 25-0170

FILED 03-25-2026

Appeal from the Superior Court in Maricopa County
No. JD43029
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant Maria S.*

Arizona Attorney General's Office, Phoenix
By Marika J. Hodge
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee D.S.*

## MEMORANDUM DECISION

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

**B A I L E Y**, Judge:

¶1        Maria S. ("Mother") appeals the termination of her parental rights to D.S. ("Child") on the statutory grounds of mental illness and fifteen months' out-of-home placement.[1] *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (8)(c).  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        We review the facts in the light most favorable to upholding the superior court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶3        Mother is the biological parent of Child, who was born in 2017.  Mother has been determined to be seriously mentally ill ("SMI") and has been diagnosed with schizoaffective disorder, post-traumatic stress disorder, anxiety, and depression.  In May 2023, Mother voluntarily checked herself in for inpatient psychiatric treatment, bringing Child with her.  The Department of Child Safety ("DCS") placed Child in a foster home and filed a dependency petition based on Mother's inability to care for Child while in treatment.

¶4        The superior court found Child dependent and ordered a family reunification case plan.  After being discharged from inpatient treatment, Mother moved to a transitional living center.  DCS provided Mother with various rehabilitative and reunification services, including psychological consultations; a psychological evaluation; parenting skills services, including Family Connections and the Nurturing Parenting Program ("NPP"); and in-person and virtual supervised visitation.  Child remained in foster care throughout the dependency.

¶5        Mother participated in the services and worked to address her mental health.  Mother used two providers for SMI services.  She also

---

[1] The superior court also terminated the parental rights of the alleged biological fathers, D.F. and John Doe.  They are not parties to this appeal.

received three NPP referrals and twice participated in that program. However, her case manager was concerned about Mother's ability to understand all the information in the NPP and the referrals were ultimately closed. NPP provided several reasons for the closure, including that Mother "showed regression from previous assessment scores," "rel[ied] on her daughter for emotional support multiple times," and expressed that her "idea of safety was keeping [Child] home full-time and not allowing her to engage with others."

**¶6** Mother also participated in Family Connections, a service to help Mother establish herself in a permanent home. Around this time, Child asked to discontinue visits with Mother and the service was closed. Child said Mother's home was unclean and she felt unsafe there. Child was participating in her own therapy at this time and had disclosed that she was abused by individuals that Mother allowed into her home. DCS's case manager confirmed Mother's inability to keep the home clean and noted a particular occasion when she arrived to find the home in disarray and animal feces on the sofa and floor.

**¶7** The DCS case worker unsuccessfully tried to persuade Child to resume in-person visits. In the meantime, a DCS unit psychologist recommended, and DCS provided, virtual visits, but Child eventually discontinued those as well. After the same DCS psychologist expressed concern that further visits could traumatize Child and lead to a fracture in her potential future relationship with Mother, DCS did not require Child to attend virtual visits.

**¶8** In April 2025, DCS moved to terminate Mother's parental rights on mental illness and fifteen months' out-of-home placement grounds, and the superior court held a termination adjudication hearing in October 2025. The court terminated Mother's parental rights that same month on both grounds. *See* A.R.S. § 8-533(B)(3), (8)(c). The court found DCS made reasonable and diligent efforts to provide Mother with appropriate reunification services and that DCS proved by a preponderance of the evidence that termination was in Child's best interests.

**¶9** Mother timely appealed. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶10** To terminate parental rights, the superior court must find clear and convincing evidence of at least one statutory ground in A.R.S. §

8-533(B) and must find by a preponderance of the evidence that termination is in the child's best interests. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). "The [superior] court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We will accept the superior court's findings unless no reasonable evidence supports those findings, and we will affirm a termination order unless it is clearly erroneous. *See id.*

**¶11** On appeal, Mother argues clear and convincing evidence did not support the statutory grounds for termination. Mother does not challenge the court's best-interests finding on appeal, and accordingly, we accept the finding and do not address it further. *See Michael J.*, 196 Ariz. at 249, ¶ 13.

**¶12** To terminate parental rights for mental illness or mental deficiency, the superior court must find that (1) the parent is unable to discharge parental responsibilities because of mental illness or a mental deficiency and (2) reasonable grounds exist to believe the condition will continue for a prolonged indeterminate period. A.R.S. § 8-533(B)(3). Under the fifteen months' out-of-home placement ground, the court may terminate a parent's rights when (1) "[t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or voluntary placement," (2) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement," and (3) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c).

**¶13** Mother argues the State failed to provide her with appropriate reunification services. Before terminating parental rights on the mental illness ground under A.R.S. § 8-533(B)(3), the court must find that the State made reasonable efforts to provide "rehabilitative services that could restore a mentally ill parent's ability to care for a child within a reasonable time." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 191-92, ¶¶ 31, 34 (App. 1999). Similarly, before terminating on the fifteen-months out-of-home placement ground, the court must find that the State has made a diligent effort to provide appropriate reunification services. A.R.S. § 8-533(B)(8)(c).

¶14    To show diligent efforts, DCS must provide the parent "with the time and opportunity to participate in programs designed to help her to become an effective parent." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011) (citation omitted). DCS should also "maintain consistent contact with the parent" and "make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 50 (App. 2019). But DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

¶15    Mother contends she received inadequate support from one mental health provider, which forced her to switch to a second provider. She argues this lack of support cost her valuable rehabilitation time during which she could have been receiving treatment. She attributes the delay directly to her case manager's failure to stay in contact with the service providers. Indeed, the DCS case manager testified that her communication with the mental health service providers was unreasonably low. Even so, the superior court found the case manager repeatedly reached out to and left messages for both service providers, indicating she sought to increase communication with those providers. The court also found the case manager "communicated with Mother in person, by phone and by text messages;" "encouraged [Mother] to continue with her SMI mental health services;" "worked with Mother in person to get Mother's HUD application done;" and "worked with community resources to fully furnish Mother's housing." In addition, the court found DCS provided other rehabilitative services to address Mother's mental health, including referrals for the NPP and Family Connections programs and psychological evaluations. The record supports the court's findings.

¶16    Mother also argues that DCS improperly ended Child's visitation with Mother. Child asked to end visitation because she felt unsafe with Mother and Mother's house was unclean. The case manager encouraged Child to resume visits by reminding Child of positive interactions Child had with Mother during past visits and "repeatedly ask[ing] the Child about her willingness to visit Mother." On the advice of a DCS psychologist, the case manager recommended virtual visits to continue contact between Child and Mother, and those visits occurred until Child asked to discontinue them. DCS's psychologist reported that Child was stressed by Mother's inappropriate comments and behaviors during visitation and that Child was often emotionally and behaviorally dysregulated after visitation. DCS chose not to require Child to resume visits out of concern for potentially traumatizing Child, as Child had

previously reported being abused while in Mother's care and was engaged with a therapist to increase her sense of safety and agency. The superior court's finding that DCS made reasonable efforts to support visitation and acted reasonably in relying on the psychologist's recommendation that Child not be forced to continue visiting Mother is supported by the record.

¶17 Finally, Mother argues the court ignored evidence that her mental health is improving and her diagnosed mental health conditions are treatable, and that DCS was unaware of and did not adequately present the progress she had made. To Mother's credit, the DCS case manager testified that Mother had made some of the behavioral changes required for a reunification plan including that she secured and maintained stable housing and cooperated with her mental health services. And the superior court noted that it heard "a significant amount of testimony relative to the efforts made by the DCS Case Manager to coordinate with Mother's behavioral health providers." The court also found that the case manager consulted more than she normally would with the DCS psychologist and provided multiple referrals to Family Connections and NPP. The superior court also considered evidence and testimony that Mother was participating in treatment to the best of her ability but noted that rehabilitation efforts had been ongoing for over two years and there was still doubt as to whether Mother could safely parent Child. In the end, the court found that "even if [the case manager] had been coordinating on a daily basis with Mother's mental health providers that Mother's situation would remain the same: given the severity of her mental illness, she is not able to safely parent the Child." The record supports the court's findings.

¶18 The superior court did not err by terminating Mother's parental rights because reasonable evidence supports the court's ruling that DCS met its statutory burden on both grounds for termination. *See* A.R.S. § 8-533(B)(3), (8)(c).

**CONCLUSION**

¶19 We affirm.

